1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RODNEY WAYNE JONES,                    No.  2:12-cv-1138 LKK GGH P

12                Petitioner,

13        v.                                FINDINGS AND RECOMMENDATIONS;
                                            ORDER
14   TIM VIRGA, et al.,

15                Respondents.

16

17        Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges a prison disciplinary conviction of battery

19   causing serious injury.  He seeks federal habeas relief on the following grounds: (1) denial of the

20   right to a fair and impartial disciplinary hearing; and (2) the disciplinary proceeding violated

21   petitioner's due process and equal protection rights.  Upon careful consideration of the record and

22   the applicable law, the undersigned will recommend that petitioner's application for habeas

23   corpus relief be **denied.**

24   BACKGROUND

25        Petitioner challenges a prison disciplinary guilty finding for battery causing serious injury[1]

26   that resulted in 360 days of credit loss.  (Pet. at 1.)  Petitioner's version of the facts is as follows.

27   _____

28   [1]  Petitioner was originally charged with attempted murder of a police officer, but the hearing
     officer reduced the finding at the disciplinary hearing.

1

On June 10, 2005, he was awakened from sleep by loud noises as his cell door was being pushed open.  He asserts that prison staff at Calipatria State Prison sprayed him with pepper spray, and then "punched, struck with batons, handcuffed and removed [him] from his assigned cell whereupon petitioner was again repeatedly and maliciously abused, beaten, struck with batons and kicked…."  Petitioner claims that as a result of this attack, he had to be transported to the emergency room where he underwent surgery for life-threatening injuries.  (ECF No. 1 at 19.)  His injuries included "four broken ribs, a punctured and collapsed lung, three severe scalp lacerations and multiple abrasions, bruising and swelling throughout petitioner's body."  (Id. at 19-20.)   Petitioner claims that staff officers, including Schommer, Ortiz, Zills, Wells and Flores committed perjury in testifying to their version of the events, as well as fabricated reports, documents, and evidence, which resulted in a criminal indictment that was later dismissed.  (Id. at 21.)

In regard to petitioner's disciplinary hearing, held on February 13, 2009, he claims he collected declarations from inmates who observed the incident, but that the Senior Hearing Officer (SHO) deemed them irrelevant.  (Id. at 22.)  He claims he also provided a written statement, a list of witnesses, and a list of documentary evidence to be collected for the disciplinary hearing.  Although petitioner was assigned an investigative employee, he claims that no investigation occurred and no assistance was provided to him.  (Id. at 23.)   He asserts that the fabricated reports by prison staff were used against petitioner at his disciplinary hearing to result in a guilty finding.  (Id. at 24.)

In contrast, the Rules Violation Report states that during a nightly cell count, petitioner was ordered by officers to remove a sheet on the inside of the cell which obscured their view. When petitioner did not comply with the order, Officer Schommer put his left arm through the food port in order to remove the sheet, but petitioner grabbed his arm and pulled it toward the back of the cell, causing Officer Schommer to hit his face on the door.  After numerous orders to petitioner to get down and break his hold on Schommer, the officers entered the cell and officers Ortiz and Torres used pepper spray on petitioner.  Petitioner began to strike Schommer in the face with his fists, as well as after the officer fell to his knees.  Petitioner then stopped, and officers

1    were able to handcuff him.  While exiting with petitioner through the sally port, petitioner became

2    combative, and was then put on the ground.  Officer Schommer suffered abrasions, scratches, and

3    a small laceration, which was later discovered to have been inflicted by a hand-made weapon

4    discovered in petitioner's cell.  (Res't's Ex. 1.)

5            Petitioner's grounds for relief are: (1) denial of his right to a fair and impartial disciplinary

6    hearing; and (2) violation of his due process and equal protection rights in regard to the

7    disciplinary process.

8    DISCUSSION

9            I.  Petitioner's Motion to Expand the Record

10           On July 24, 2013, petitioner filed a motion to expand the record which was denied without

11   prejudice to the court's *sua sponte* reconsideration of this motion.  (ECF No. 24.)  After

12   reviewing the substance of the petition, the court finds no reason to grant this motion.  Pursuant to

13   Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398, 1400 (2011), federal habeas

14   review under 28 U.S.C. §  2254(d)(1) "is limited to the record that was before the state court that

15   adjudicated the claim on the merits" and "evidence introduced in federal court has no bearing on"

16   such review.  Cullen applies to motions to expand the record.  See Winston v. Neven, __Fed.

17   APX__, 2013 WL6154118 (9th Cir. 2013); Martin v. Uttecht, 2013 WL 5492529 (W.D. Wash.

18   2013); Friedman v. Palmer, 2013 WL 4501027 (D. Nev. 2013); Almeda v.McDonald, 2012 WL

19   2358658 (E.D. Cal. 2012).

20           The records submitted by petitioner include a portion of a deposition transcript of Officer

21   Sandoval in a separate civil rights action refuting that Officer Bailey[2] was present during the

22   incident at issue; a court of appeals opinion in a second state court action validating petitioner's

23   allegations that prison officials at Corcoran Prison destroyed his legal property related to the civil

24   rights action in the Southern District of California; and a settlement agreement between petitioner

25   and some of the officer defendants involved in the incident at issue in regard to his civil rights

26   action for excessive force, in which he was paid $30,000 and agreed not to waive claims in this

27   _____

28   [2]   The RVR states that Officer Bailey was not present during the incident.  (Res't's Ex. 4 at 3.)

habeas action.

Not only were the proffered records not before the state courts, as the evidence was not in existence, or simply not submitted, the relevance of these records is either non-existent, pertaining to alleged destruction of records having nothing to do with the instant action or the parties involved, or of questionable relevance as the documents have been presented without a context.  In particular, the settlement agreement, as is typically the case, contains no findings of fact or conclusions of law.  A settlement is precisely that, a document to bring resolution to a dispute without an admission of fault and without divulging information pertinent to the claims or defenses.[3]

These findings and recommendations determine on the present record that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. Nor was it an unreasonable determination of the facts.  Therefore, the undersigned's prior decision denying petitioner's request to expand the record is affirmed.

II.  AEDPA Standards

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/////

_____

[3] If one were compelled to speculate on the inferences to be drawn from the settlement, the more logical speculation is that the extraction, whatever its cause, was more rough than necessary. This inference would not relate to the core of this habeas action—whether petitioner initiated the actions, including a battery, which led to his extraction.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

/////

1    The undersigned also finds that the same deference is paid to the factual determinations of

2    state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

3    subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

4    decision that was based on an unreasonable determination of the facts in light of the evidence

5    presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

6    2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

7    factual error must be so apparent that "fairminded jurists" examining the same record could not

8    abide by the state court factual determination.  A petitioner must show clearly and convincingly

9    that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.

10   969, 974 (2006).

11   The habeas corpus petitioner bears the burden of demonstrating the objectively

12   unreasonable nature of the state court decision in light of controlling Supreme Court authority.

13   Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

14   show that the state court's ruling on the claim being presented in federal court was so lacking in

15   justification that there was an error well understood and comprehended in existing law beyond

16   any possibility for fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  "Clearly

17   established" law is law that has been "squarely addressed" by the United States Supreme Court.

18   Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008).  Thus, extrapolations of

19   settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

20   Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state

21   sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

22   prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

23   established law when spectators' conduct is the alleged cause of bias injection).  The established

24   Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

25   controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

26   federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

27   The state courts need not have cited to federal authority, or even have indicated awareness

28   of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S. Ct. at 365.

1   Where the state courts have not addressed the constitutional issue in dispute in any reasoned

2   opinion, the federal court will independently review the record in adjudication of that issue.

3   "Independent review of the record is not de novo review of the constitutional issue, but rather, the

4   only method by which we can determine whether a silent state court decision is objectively

5   unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

6          Finally, if the state courts have not adjudicated the merits of the federal issue, no

7   AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law.

8   Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).  However, when a state court decision on a

9   petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

10  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

11  merits.  Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

12         III.  ANALYSIS

13         A prisoner may challenge a prison disciplinary conviction by petition for writ of habeas

14  corpus if the conviction resulted in the loss of good time credits because credits impact the

15  duration of the prisoner's confinement.  Preiser v. Rodriguez, 411 U.S. 475, 487-88, 93 S. Ct.

16  1827 (1973) (suit seeking restoration of good time credits was "within the core of habeas corpus

17  in attacking the very duration of their physical confinement itself").  In dicta, the court in Preiser

18  noted that such a challenge is permissible even if restoration of the credits would not result in the

19  prisoner's immediate release from prison.  Id.

20         "Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a

21  disciplinary finding from his record if expungement is likely to accelerate the prisoner's

22  eligibility for parole."  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989); see also Docken v.

23  Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) ("[W]e understand Bostic's use of the term 'likely' to

24  identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not

25  fall squarely within, the 'core' challenges identified by the Preiser Court.")

26         Pursuant to Cal. Code  Regs. tit.xv, § 2402(a), the BPH is required to determine

27  petitioner's suitability for parole by considering:  his "involvement in other criminal misconduct

28  which is reliably documented"; his "behavior before, during, and after the crime"; and whether he

1   "has engaged in serious misconduct in prison or jail."  Cal. Code  Regs. tit.xv, § 2402(b), (c)(6)

2   (2010).  Institutional behavior is given additional consideration because "[i]nstitutional activities

3   indicate an enhanced ability to function within the law upon release."  Id. § 2402(d)(9).

4   Therefore, the BPH is required to consider petitioner's prison disciplinary record in determining

5   his suitability for parole.

6          As petitioner's habeas petition with the California Supreme Court was denied without

7   citation (Res't's Ex. 11), the presumption is that it adopted the last explained decision, that of the

8   California Court of Appeals.  Plascencia v. Alameda, 467 F.3d 1190, 1198 (9th Cir. 2006).  That

9   decision, issued April 8, 2011, found that the petition could be denied for failure to seek timely

10  review after exhaustion of administrative remedies, and on the merits found some evidence to

11  support the disciplinary finding.  (Id., Ex. 9.)

12         In its reasoned opinion, the California Court of Appeal explained that an investigative

13  employee was assigned and prepared a report which was provided to petitioner prior to the

14  hearing.  Petitioner gave an extensive statement at the hearing and submitted questions for the

15  witnesses.  Some of the questions were not posed because the Senior Hearing Officer determined

16  they were not relevant.  Certain witnesses were not called because the SHO determined they were

17  not present at the incident and would not have relevant information.  An additional witness no

18  longer worked for the CDCR and was unavailable.  Additionally, the court found some evidence

19  to support battery causing serious injury:  "Jones grabbed Officer Schommer's arm through the

20  food port in Jones's cell and pulled the officer, causing him to hit his face on the door.  When the

21  officers opened the cell door, Jones struck Officer Schommer in the face, causing him to fall on

22  his knees.  Officer Schommer sustained a cut on the forehead and swelling on the top of his

23  head."  (Res't's Ex. 9 at 3.)

24         While prisoners may not be wholly deprived of their constitutional rights, "there must be

25  mutual accommodation between institutional needs and objectives and the provisions of the

26  Constitution... ."  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974).  "Prison

27  disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

28  a defendant in such proceedings does not apply."  Id.  A prisoner's due process rights must be

1    accommodated to the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d

2    1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct.

3    2768 [] (1984).  With respect to prison disciplinary proceedings, the minimum procedural

4    requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between

5    the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

6    prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

7    reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present

8    documentary evidence in his defense, when permitting him to do so would not be unduly

9    hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

10   where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.

11   Confrontation and cross examination are not generally required.  Id. at 567.

12        In addition, due process requires that the decision be supported by "some evidence."

13   Superintendent v. Hill, 472 U.S. at 455, 105 S. Ct. 2768, citing United States ex rel. Vajtauer v.

14   Commissioner of Immigration, 273 U.S. 103, 106, 47 S. Ct. 302, 71 L.Ed. 560 (1927).  In Hill,

15   the United States Supreme Court explained that this standard is met if "there was some evidence

16   from which the conclusion of the administrative tribunal could be deduced ..."  Id.  "Ascertaining

17   whether this standard is satisfied does not require an examination of the entire record,

18   independent assessment of the credibility of witnesses, or weighing of the evidence."  Hill, 472

19   U.S. at 455-456.  Instead, "the relevant question is whether there is any evidence in the record

20   that could support the conclusion reached by the disciplinary board."  Id.

21        The Hill Court provided justification for the less demanding standard:

22              We decline to adopt a more stringent evidentiary standard as a
                constitutional requirement.  Prison disciplinary proceedings take
23              place in a highly charged atmosphere, and prison administrators
                must often act swiftly on the basis of evidence that might be
24              insufficient in less exigent circumstances. [] The fundamental
                fairness guaranteed by the Due Process Clause does not require the
25              courts to set aside decisions of prison administrators that have some
                basis in fact. [] Revocation of good time credits is not comparable
26              to a criminal conviction, [] and neither the amount of evidence
                necessary to support such a conviction, [] nor any other standard
27              greater than some evidence applies in this context.

28   Id. at 456 [citations omitted].

9

1    "The Federal Constitution does not require evidence that logically precludes any

2    conclusion but the one reached by the disciplinary board." Hill, at 457.  Even where the evidence

3    as in Hill "might be characterized as meager," if "the record is not so devoid of evidence that the

4    findings of the disciplinary board were without support or otherwise arbitrary," those findings

5    must be upheld. Id.  Therefore, if the procedures outlined above are afforded to a prisoner, and

6    "some evidence" supports the decision of the hearing officer decision, the requirements of due

7    process are met. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at 1269-1270.

8            Failure to Conduct an Investigation

9            Petitioner first claims that even though an Investigative Employee was assigned to his

10   case, no investigation was conducted.  Petitioner claims he was not interviewed about the

11   incident, information and evidence was not gathered, and staff and inmates were not questioned.

12   This investigative employee did submit a report to petitioner two days before the hearing, as

13   noted by the California Court of Appeals. See Res't's Ex. 4 at 1, 4 (noting petitioner received all

14   reports at least 24 hours prior to the disciplinary hearing and noting this report as evidence

15   presented at the hearing.)  The Investigative Employee report reflects that Officer Pankratz, who

16   was assigned this task, informed petitioner that his function was to collect information, interview

17   petitioner and all witnesses.  Although the report does not specifically state that petitioner was

18   interviewed, it does state that petitioner provided a statement to the Investigative Employee, as

19   well as questions to be asked of possible witnesses.  (ECF No. 1-1 at 78.)  There is no right to a

20   thorough investigative report or even an investigation, nor even a right to assignment of an

21   investigative employee, which was provided to petitioner in this case. See Fuqua v. Swarthout,

22   2013 WL 5493373, *5 (E. D. Cal. Oct. 2, 2013) (no right to investigative employee); Pickett v.

23   Williams, 2011 WL 4913573, *4 (D. Or. Aug. 23, 2011) (no right to investigation).

24           Determination that Petitioner's Witnesses Were Irrelevant

25           Petitioner next suggests that the investigative employee and the SHO suppressed and

26   concealed evidence favorable to petitioner by deeming all of petitioner's witnesses irrelevant.  In

27   particular, petitioner asserts that his requested witness, George Wallet, an investigator, had a

28   statement by Sgt. Torres which recanted his RVR statement and exonerated petitioner.  (ECF No.

                                                    10

1 at 29.)  Petitioner further claims that all criminal charges brought against him by the District

Attorney were dismissed with prejudice at the recommendation of Lt. Stratton, who was

petitioner's key witness.  (Id. at 29-30.)

The RVR states that petitioner requested five witnesses for the hearing, all of whom were

denied.  Correctional Officer Bailey, Correctional Lieutenant Stratton, Attorney Storey and

Investigator Wallet were all denied because there were not present at the incident and therefore

were found to have no relevant or additional information.  (Res't's Ex. 4 at 3.)  Correctional

Sergeant Torres was denied because he was no longer employed by the CDC and was

unavailable.  The RVR noted, however, that Torres' report was reviewed as evidence for the

disciplinary.  (Id.)

Although an inmate has a right to call witnesses at his disciplinary hearing, certain

witnesses may be denied on the basis of "irrelevance, lack of necessity, or the hazards presented

in individual cases."  Wolff, 418 U.S. at 566.  There is no due process violation for refusing a

prisoner's request to call witnesses whose testimony would be repetitive, irrelevant, or

unnecessary.  Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989); Pannell v. McBride, 306

F.3d 499, 503 (7th Cir. 2002).   Due process is also not violated where the SHO excludes a

witness because he or she no longer works at the prison.  Santibanez v. Havlin, 750 F. Supp.2d

1121, 1131 (E.D. Cal. 2010).  Furthermore, to the extent that petitioner claims that the SHO

violated his rights when he stopped petitioner's questioning of witness Officer Ortiz, there is no

constitutional right to confront or cross-examine adverse witnesses at disciplinary hearings.

Ponte v. Real, 471 U.S. 491, 510, 105 S. Ct. 2192, 2203 (1985).  Such questioning is permissible

at the prison official's discretion.  Crutcher v. Cate, 2012 WL 6023752, *7 n. 4 (C.D. Cal. Jul. 30,

2012) (citing Zimmerlee v. Keeney, 831 F.2d at 183, 187 n. 2 (9th Cir. 1987)).  There are

penological needs at stake, such as the prison's need to keep the hearing within reasonable limits,

limit the inmate's access to other inmates, prevent unsafe or hazardous situations, and provide

swift discipline.  Wolff, 418 U.S. at 566; Ponte, 471 U.S. at 495.  Additionally, although useful,

prison officials are not required to state reasons for disallowing a witness' testimony.  Wolff, 418

U.S. at 566.   In this case, the SHO did provide reasons for denying certain requested witnesses.

11

1   As in <u>Davies v. Valdes</u>, 462 F. Supp.2d 1084, 1093 (C. D. Cal. 2006), where the issue was

2   whether petitioner possessed a weapon at the time of a search, inmate witnesses who were not

3   present at the incident would not be helpful to this determination, or to a determination

4   concerning whether plaintiff battered an officer.  The SHO's stated reasons for denying

5   petitioner's witnesses and curtailing his questioning of Officer Ortiz were reasonable and within

6   his discretion.

7        In support of his claim that Lt. Stratton recommended that the criminal case against

8   petitioner be dismissed, petitioner refers to Exhibit 11 of the petition which is merely his request

9   for witnesses at his disciplinary.  Lt. Stratton is only mentioned as one of a list of witnesses he

10  requests.  (ECF No. 1-1 at 75 – 76.)   Petitioner has submitted no evidence to support his

11  assertion.  In any event, this witness was not present at the incident and the SHO's decision not to

12  call him as a witness was correct in that his testimony was irrelevant.

13       With respect to petitioner's claim that investigator George Wallet should have been

14  permitted as a witness because he had information that Sgt. Torres recanted his RVR statement

15  and exonerated petitioner, petitioner has referenced no evidence in support.  (ECF No. 1 at 29.)

16  The court has reviewed petitioner's exhibits and finds no evidence submitted in this regard.

17       The evidence submitted by petitioner in fact supports the disciplinary determination.  All

18  of the witness statements taken a few weeks after the incident are consistent with the remainder of

19  the record and the Rules Violation Report.  <u>See, e.g.</u> CDC 837 Incident Report.  (ECF No. 1-3 at

20  25 - 55.)  Petitioner's due process rights were not violated by the failure to call these witnesses.

21       <u>Refusal to Admit Statements and Other Documentation and Denial of Other Requests by</u>

22  <u>Petitioner at Disciplinary Hearing</u>

23       Petitioner further asserts that his disciplinary hearing was not fair and impartial for

24  additional reasons, specifically:

25          [t]he senior hearing officer additionally omitted and refused to
           document statements and requests made during the course of
26          adjudicating petitioner's disciplinary hearing, including, but not
           limited to: petitioner's request to amend his previous oral and/or
27          written statement to adequately reflect the senior hearing officer's
           hostile and belligerent attitude towards petitioner, petitioner's
28          request to question his alleged assigned investigative employee,

                                        12

1    petitioner's request to submit inmate witnesses' declarations and
2    petitioner's request to document the presence of C/O M. Ortega
     during deliberation and disposition of petitioner's disciplinary
3    charges....

4    (ECF No. 1 at 31.)  Wolff provides that only minimum requirements be met.  As set forth

5    supra, although there is a right to an impartial decision maker, there is no right to submit a

6    statement setting forth a hearing officer's perceived hostile and belligerent attitude.  Petitioner

7    fails to make any argument that his hearing officer was in fact biased.  The Court of Appeals,

8    noting petitioner's claim that he was denied his right to "be heard in a meaningful manner by a

9    neutral and detached hearing body," declined to specifically address that claim; however,

10   analyzed and concluded that "some evidence" supported the disciplinary finding.  (Res't's Ex. 9.)

11   Therefore, the court presumes that the state court considered and rejected it.

12        In regard to petitioner's claim that he was not permitted to question his assigned

13   investigative employee, the RVR indicates that investigating Officer Pankratz was not one of the

14   six witnesses requested by petitioner.  (Res't's Ex. 4 at 3.)  The RVR states that petitioner did not

15   request that the investigative employee be present at the hearing.  (ECF No. 1-1 at 79.)  There is

16   otherwise no distinct right to question an investigative employee.

17        As for petitioner's complaint that he was denied his request to submit inmate witness

18   declarations,[4] there is no record that petitioner made these requests to his investigative employee.

19   (Res't's Ex. 12.)  In fact, the investigative report states clearly that petitioner did not request

20   inmate witnesses at the hearing.  (Id. at 2; ECF No. 1-1 at 79.)  Nor does the RVR refer to any

21   request by petitioner to admit inmate witness declarations into evidence.  (Res't's Ex. 4.)  There is

22   no evidence that the two inmate declarations submitted with the instant petition were ever

23   requested for petitioner's disciplinary hearing.  (ECF No. 1-1 at 75-76.)

24        Finally, there is no requirement whatsoever that an inmate be permitted to document the

25   presence of a correctional officer at the deliberation and disposition of the disciplinary hearing.

26   /////

27   _____

28   [4]  The court presumes that the inmate witness declarations attached to the instant petition are the
     declarations to which petitioner refers.  See ECF No. 1-1 at 33, 38.

13

1    Petitioner's second ground for relief, that his due process and equal protection rights were

2    violated, raises most of the same allegations that he raised in his first section, which have already

3    been addressed.  His additional argument that he was not permitted rebuttal evidence in the form

4    of grand jury transcripts of the Imperial County Superior Court in regard to the criminal charges

5    filed against him which were later dismissed, is unavailing.  The RVR indicates that petitioner did

6    request introduction of the entirety of the superior court transcripts as evidence for the hearing.

7    (Res't's Ex. 4 at 6-7.)  The SHO reported that he denied the request because the state court case

8    had been dismissed, citing a state regulation which permits disciplinary hearing of a rules

9    violation despite dismissal of criminal charges.  (Id.)  This explanation is sufficient.  See Ponte v.

10   Real, 471 U.S. 491, 497, 105 S. Ct. 2192 (1985).  The right to present documentary evidence is a

11   limited right, which may be curtailed by prison officials in order to keep the hearing within

12   reasonable limits.  Wolff, 18 U. S. at 566.  Petitioner has not shown how the grand jury transcripts

13   would have aided him at the disciplinary hearing.  The transcripts submitted by petitioner have

14   been reviewed and not only support the SHO's decision to exclude them, but establish petitioner's

15   culpability.  They are cumulative and unnecessary to the proceedings as the SHO had before him

16   live testimony as well as the reports of five officers who were involved in and witnessed the

17   incident.[5]  (Pet., ECF No. 1-4 at 1-128.)  Accordingly, this evidence would not have changed the

18   outcome of the disciplinary hearing.  The evidence presented at the disciplinary hearing included

19   the testimony of correctional officer Ortiz, who petitioner was permitted to question in a limited

20   manner, the Rules Violation Report, Officer Pankratz's investigative employee's report,

21   supplemental reports to the CDC 837 crime incident report, medical reports, photos of the

22   weapon found in petitioner's cell, and photos of injuries to correctional officer Schommer.

23   (Res't's Ex. 4.)  There was no due process violation in the decision to exclude the grand jury

24   transcripts.

25   /////

26   _____

27   [5]  Four of the incident reports reviewed by the SHO were written by the same correctional
     officers who testified at the grand jury hearing.  Only two witnesses who testified before the
     grand jury did not submit reports for the disciplinary hearing, Officer Zills and MTA Barrios, but
28   they were not present until after the battery had occurred.  See ECF No. 1-4 at 60 – 77, 89 - 95.

Petitioner's remaining argument, that he did not receive the proper statutory notice when his RVR charge was reduced from attempted murder to battery causing serious injury, is also without merit.  The purpose of advance written notice is to inform the prisoner of the charges and enable him to gather and present the facts in his defense.  <u>Wolff</u>, 418 U.S. at 564.  Here, petitioner was initially charged with attempted murder of a peace officer.  (Res't's Ex. 1 at 1.)  At the disciplinary hearing, the SHO reduced the charge and petitioner was found guilty of the lesser included offense of battery causing serious injury.  (<u>Id.</u> at Ex. 4 at 1.)  This finding does not violate the notice requirement as Petitioner was provided with the date, time, place, and facts at issue.  In addition, the hearing officer has the authority to reduce the offense at his discretion during the disciplinary hearing or, after the fact-finding portion of the hearing is completed, and may find the inmate guilty of an included serious rule violation.  <u>See</u> Cal.Code Regs. tit. 15, §§ 3313(c); 3315(f)(3).  There is no due process violation for failure to give notice of a lesser included offense.  <u>Rivera v. Chavez</u>, 2013 WL 1010534, *5 (C.D. Cal. Feb. 8, 2013); <u>Jameson v. Yates</u>, 2008 WL 4937376, * (E.D. Cal. Nov. 17, 2008).  Therefore, there is no basis to support petitioner's argument that he did not have sufficient notice in advance of the hearing, and his claim to the contrary is unfounded.

To the extent that petitioner claims an equal protection violation, he has not made any argument other than to claim in a conclusory fashion that because he was not afforded the same due process protections as other inmates, his equal protection rights were violated.  Because this court finds no due process violations, it declines to reach any equal protection argument.

There was "some evidence" to support the decision rendered on the disciplinary charge, in the form of the investigative employee's report, the rules violation report, and the testimony of Officer Ortiz at the hearing.  Petitioner was permitted to make a statement and ask some questions of this witness.  There is no credible evidence that the decision maker was not impartial.

Under the circumstances presented here, petitioner's right to due process was not violated at the February 13, 2009 disciplinary hearing. The decision of the state courts to the same effect is

/////

/////

15

1    not contrary to or an unreasonable application of the federal principles set forth above.

2    Accordingly, petitioner is not entitled to relief on this claim.[6]

3    CONCLUSION

4           For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the

5    Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

6    appealability when it enters a final order adverse to the applicant.  A certificate of appealability

7    may issue only "if the applicant has made a substantial showing of the denial of a constitutional

8    right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations,

9    a substantial showing of the denial of a constitutional right has not been made in this case.

10   _____

11   [6]  To the extent that petitioner claims that the state court failed to consider his state law claims
     under Cal. Penal Code § 2932(c) and/or any other California regulations, petitioner is advised that
     a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some
12   transgression of federal law binding on the state courts.  Middleton v. Cupp, 768 F.2d 1083, 1085
     (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for
13   alleged error in the interpretation or application of state law.  Middleton v. Cupp, 768 F.2d at
     1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786
14   F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.
15   Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).
            The Supreme Court has reiterated the standards of review for a federal habeas court.
16   Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991).  In Estelle v. McGuire, the Supreme
     Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted
17   federal habeas relief.  The Court held that the Ninth Circuit erred in concluding that the evidence
     was incorrectly admitted under state law since, "it is not the province of a federal habeas court to
18   reexamine state court determinations on state law questions."  Id. at 67-68, 112 S. Ct. at 480.  The
     Court re-emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. at
19   67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and
20   Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant
     habeas relief where the sole ground presented involves a perceived error of state law, unless said
21   error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of
     the Fourteenth Amendment).
22          The Supreme Court further noted that the standard of review for a federal habeas court "is
23   limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United
     States (citations omitted)."  Id. at 68, 112 S. Ct. at 480.  The Court also stated that in order for
24   error in the state trial proceedings to reach the level of a due process violation, the error had to be
     one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the
25   category of infractions that violate "fundamental fairness" very narrowly.'"  Id. at 73, 112 S. Ct.
     at 482.  Habeas review does not lie in a claim that the state court erroneously allowed or excluded
26   particular evidence according to state evidentiary rules.  Jammal v. Van de Kamp, 926 F.2d 918,
27   919 (9th Cir. 1991).  As more recently re-emphasized by the Supreme Court, "'a mere error of
     state law ... is not a denial of due process.'"  Rivera v. Illinois, 556 U.S. 148, 129 S. Ct. 1446,
28   1454 (2009) (quoting Engle v. Isaac, 456 107, 121, n. 21, 102 S. Ct. 1558 [] (1982)).

1      Accordingly, IT IS HEREBY ORDERED that petitioner's request to expand the record is

2   denied;

3      IT IS HEREBY RECOMMENDED that:

4      1.  Petitioner's application for a writ of habeas corpus be denied; and

5      2.  The District Court decline to issue a certificate of appealability.

6      These findings and recommendations are submitted to the United States District Judge

7   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

8   after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within fourteen days after service of the objections.  Failure to file

12  objections within the specified time may waive the right to appeal the District Court's order.

13  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  Dated: December 3, 2013

15                              /s/ Gregory G. Hollows

16                      UNITED STATES MAGISTRATE JUDGE

17

18  GGH:076/Jone1138.hc

19

20

21

22

23

24

25

26

27

28