UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY WAYNE JONES, | No. 2:12-cv-1138 LKK GGH P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS; ORDER |
| TIM VIRGA, et al., | |
| Respondents. | |

Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a prison disciplinary conviction of battery causing serious injury.  He seeks federal habeas relief on the following grounds: (1) denial of the right to a fair and impartial disciplinary hearing; and (2) the disciplinary proceeding violated petitioner's due process and equal protection rights.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be **denied.**

BACKGROUND

Petitioner challenges a prison disciplinary guilty finding for battery causing serious injury[1] that resulted in 360 days of credit loss.  (Pet. at 1.)  Petitioner's version of the facts is as follows.

---

[1] Petitioner was originally charged with attempted murder of a police officer, but the hearing officer reduced the finding at the disciplinary hearing.

1

On June 10, 2005, he was awakened from sleep by loud noises as his cell door was being pushed open. He asserts that prison staff at Calipatria State Prison sprayed him with pepper spray, and then "punched, struck with batons, handcuffed and removed [him] from his assigned cell whereupon petitioner was again repeatedly and maliciously abused, beaten, struck with batons and kicked…." Petitioner claims that as a result of this attack, he had to be transported to the emergency room where he underwent surgery for life-threatening injuries. (ECF No. 1 at 19.) His injuries included "four broken ribs, a punctured and collapsed lung, three severe scalp lacerations and multiple abrasions, bruising and swelling throughout petitioner's body." (Id. at 19-20.) Petitioner claims that staff officers, including Schommer, Ortiz, Zills, Wells and Flores committed perjury in testifying to their version of the events, as well as fabricated reports, documents, and evidence, which resulted in a criminal indictment that was later dismissed. (Id. at 21.)

In regard to petitioner's disciplinary hearing, held on February 13, 2009, he claims he collected declarations from inmates who observed the incident, but that the Senior Hearing Officer (SHO) deemed them irrelevant. (Id. at 22.) He claims he also provided a written statement, a list of witnesses, and a list of documentary evidence to be collected for the disciplinary hearing. Although petitioner was assigned an investigative employee, he claims that no investigation occurred and no assistance was provided to him. (Id. at 23.) He asserts that the fabricated reports by prison staff were used against petitioner at his disciplinary hearing to result in a guilty finding. (Id. at 24.)

In contrast, the Rules Violation Report states that during a nightly cell count, petitioner was ordered by officers to remove a sheet on the inside of the cell which obscured their view. When petitioner did not comply with the order, Officer Schommer put his left arm through the food port in order to remove the sheet, but petitioner grabbed his arm and pulled it toward the back of the cell, causing Officer Schommer to hit his face on the door. After numerous orders to petitioner to get down and break his hold on Schommer, the officers entered the cell and officers Ortiz and Torres used pepper spray on petitioner. Petitioner began to strike Schommer in the face with his fists, as well as after the officer fell to his knees. Petitioner then stopped, and officers

were able to handcuff him. While exiting with petitioner through the sally port, petitioner became combative, and was then put on the ground. Officer Schommer suffered abrasions, scratches, and a small laceration, which was later discovered to have been inflicted by a hand-made weapon discovered in petitioner's cell. (Res't's Ex. 1.)

Petitioner's grounds for relief are: (1) denial of his right to a fair and impartial disciplinary hearing; and (2) violation of his due process and equal protection rights in regard to the disciplinary process.

DISCUSSION

I. Petitioner's Motion to Expand the Record

On July 24, 2013, petitioner filed a motion to expand the record which was denied without prejudice to the court's *sua sponte* reconsideration of this motion. (ECF No. 24.) After reviewing the substance of the petition, the court finds no reason to grant this motion. Pursuant to Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398, 1400 (2011), federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "evidence introduced in federal court has no bearing on" such review. Cullen applies to motions to expand the record. See Winston v. Neven, __Fed. APX__, 2013 WL6154118 (9th Cir. 2013); Martin v. Uttecht, 2013 WL 5492529 (W.D. Wash. 2013); Friedman v. Palmer, 2013 WL 4501027 (D. Nev. 2013); Almeda v.McDonald, 2012 WL 2358658 (E.D. Cal. 2012).

The records submitted by petitioner include a portion of a deposition transcript of Officer Sandoval in a separate civil rights action refuting that Officer Bailey[2] was present during the incident at issue; a court of appeals opinion in a second state court action validating petitioner's allegations that prison officials at Corcoran Prison destroyed his legal property related to the civil rights action in the Southern District of California; and a settlement agreement between petitioner and some of the officer defendants involved in the incident at issue in regard to his civil rights action for excessive force, in which he was paid $30,000 and agreed not to waive claims in this

---

[2] The RVR states that Officer Bailey was not present during the incident. (Res't's Ex. 4 at 3.)

3

habeas action.

Not only were the proffered records not before the state courts, as the evidence was not in existence, or simply not submitted, the relevance of these records is either non-existent, pertaining to alleged destruction of records having nothing to do with the instant action or the parties involved, or of questionable relevance as the documents have been presented without a context.  In particular, the settlement agreement, as is typically the case, contains no findings of fact or conclusions of law.  A settlement is precisely that, a document to bring resolution to a dispute without an admission of fault and without divulging information pertinent to the claims or defenses.[3]

These findings and recommendations determine on the present record that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. Nor was it an unreasonable determination of the facts.  Therefore, the undersigned's prior decision denying petitioner's request to expand the record is affirmed.

II.  AEDPA Standards

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/////

---

[3] If one were compelled to speculate on the inferences to be drawn from the settlement, the more logical speculation is that the extraction, whatever its cause, was more rough than necessary. This inference would not relate to the core of this habeas action—whether petitioner initiated the actions, including a battery, which led to his extraction.

4

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

/////

5

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S. Ct. at 365.

Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

III.  ANALYSIS

A prisoner may challenge a prison disciplinary conviction by petition for writ of habeas corpus if the conviction resulted in the loss of good time credits because credits impact the duration of the prisoner's confinement. Preiser v. Rodriguez, 411 U.S. 475, 487-88, 93 S. Ct. 1827 (1973) (suit seeking restoration of good time credits was "within the core of habeas corpus in attacking the very duration of their physical confinement itself"). In dicta, the court in Preiser noted that such a challenge is permissible even if restoration of the credits would not result in the prisoner's immediate release from prison. Id.

"Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989); see also Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) ("[W]e understand Bostic's use of the term 'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the Preiser Court.")

Pursuant to Cal. Code Regs. tit.xv, § 2402(a), the BPH is required to determine petitioner's suitability for parole by considering:  his "involvement in other criminal misconduct which is reliably documented"; his "behavior before, during, and after the crime"; and whether he

7

"has engaged in serious misconduct in prison or jail." Cal. Code Regs. tit.xv, § 2402(b), (c)(6) (2010). Institutional behavior is given additional consideration because "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Id. § 2402(d)(9). Therefore, the BPH is required to consider petitioner's prison disciplinary record in determining his suitability for parole.

As petitioner's habeas petition with the California Supreme Court was denied without citation (Res't's Ex. 11), the presumption is that it adopted the last explained decision, that of the California Court of Appeals. Plascencia v. Alameda, 467 F.3d 1190, 1198 (9th Cir. 2006). That decision, issued April 8, 2011, found that the petition could be denied for failure to seek timely review after exhaustion of administrative remedies, and on the merits found some evidence to support the disciplinary finding. (Id., Ex. 9.)

In its reasoned opinion, the California Court of Appeal explained that an investigative employee was assigned and prepared a report which was provided to petitioner prior to the hearing. Petitioner gave an extensive statement at the hearing and submitted questions for the witnesses. Some of the questions were not posed because the Senior Hearing Officer determined they were not relevant. Certain witnesses were not called because the SHO determined they were not present at the incident and would not have relevant information. An additional witness no longer worked for the CDCR and was unavailable. Additionally, the court found some evidence to support battery causing serious injury: "Jones grabbed Officer Schommer's arm through the food port in Jones's cell and pulled the officer, causing him to hit his face on the door. When the officers opened the cell door, Jones struck Officer Schommer in the face, causing him to fall on his knees. Officer Schommer sustained a cut on the forehead and swelling on the top of his head." (Res't's Ex. 9 at 3.)

While prisoners may not be wholly deprived of their constitutional rights, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution... ." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. A prisoner's due process rights must be

8

accommodated to the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct. 2768 [] (1984). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. Confrontation and cross examination are not generally required. Id. at 567.

In addition, due process requires that the decision be supported by "some evidence." Superintendent v. Hill, 472 U.S. at 455, 105 S. Ct. 2768, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S. Ct. 302, 71 L.Ed. 560 (1927). In Hill, the United States Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ..." Id. "Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455-456. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

The Hill Court provided justification for the less demanding standard:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. [] The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. [] Revocation of good time credits is not comparable to a criminal conviction, [] and neither the amount of evidence necessary to support such a conviction, [] nor any other standard greater than some evidence applies in this context.

Id. at 456 [citations omitted].

9

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill, at 457. Even where the evidence as in Hill "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id. Therefore, if the procedures outlined above are afforded to a prisoner, and "some evidence" supports the decision of the hearing officer decision, the requirements of due process are met. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at 1269-1270.

Failure to Conduct an Investigation

Petitioner first claims that even though an Investigative Employee was assigned to his case, no investigation was conducted. Petitioner claims he was not interviewed about the incident, information and evidence was not gathered, and staff and inmates were not questioned. This investigative employee did submit a report to petitioner two days before the hearing, as noted by the California Court of Appeals. See Res't's Ex. 4 at 1, 4 (noting petitioner received all reports at least 24 hours prior to the disciplinary hearing and noting this report as evidence presented at the hearing.) The Investigative Employee report reflects that Officer Pankratz, who was assigned this task, informed petitioner that his function was to collect information, interview petitioner and all witnesses. Although the report does not specifically state that petitioner was interviewed, it does state that petitioner provided a statement to the Investigative Employee, as well as questions to be asked of possible witnesses. (ECF No. 1-1 at 78.) There is no right to a thorough investigative report or even an investigation, nor even a right to assignment of an investigative employee, which was provided to petitioner in this case. See Fuqua v. Swarthout, 2013 WL 5493373, *5 (E. D. Cal. Oct. 2, 2013) (no right to investigative employee); Pickett v. Williams, 2011 WL 4913573, *4 (D. Or. Aug. 23, 2011) (no right to investigation).

Determination that Petitioner's Witnesses Were Irrelevant

Petitioner next suggests that the investigative employee and the SHO suppressed and concealed evidence favorable to petitioner by deeming all of petitioner's witnesses irrelevant. In particular, petitioner asserts that his requested witness, George Wallet, an investigator, had a statement by Sgt. Torres which recanted his RVR statement and exonerated petitioner. (ECF No.

1 at 29.) Petitioner further claims that all criminal charges brought against him by the District Attorney were dismissed with prejudice at the recommendation of Lt. Stratton, who was petitioner's key witness. (Id. at 29-30.)

The RVR states that petitioner requested five witnesses for the hearing, all of whom were denied. Correctional Officer Bailey, Correctional Lieutenant Stratton, Attorney Storey and Investigator Wallet were all denied because there were not present at the incident and therefore were found to have no relevant or additional information. (Res't's Ex. 4 at 3.) Correctional Sergeant Torres was denied because he was no longer employed by the CDC and was unavailable. The RVR noted, however, that Torres' report was reviewed as evidence for the disciplinary. (Id.)

Although an inmate has a right to call witnesses at his disciplinary hearing, certain witnesses may be denied on the basis of "irrelevance, lack of necessity, or the hazards presented in individual cases." Wolff, 418 U.S. at 566. There is no due process violation for refusing a prisoner's request to call witnesses whose testimony would be repetitive, irrelevant, or unnecessary. Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989); Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002). Due process is also not violated where the SHO excludes a witness because he or she no longer works at the prison. Santibanez v. Havlin, 750 F. Supp.2d 1121, 1131 (E.D. Cal. 2010). Furthermore, to the extent that petitioner claims that the SHO violated his rights when he stopped petitioner's questioning of witness Officer Ortiz, there is no constitutional right to confront or cross-examine adverse witnesses at disciplinary hearings. Ponte v. Real, 471 U.S. 491, 510, 105 S. Ct. 2192, 2203 (1985). Such questioning is permissible at the prison official's discretion. Crutcher v. Cate, 2012 WL 6023752, *7 n. 4 (C.D. Cal. Jul. 30, 2012) (citing Zimmerlee v. Keeney, 831 F.2d at 183, 187 n. 2 (9th Cir. 1987)). There are penological needs at stake, such as the prison's need to keep the hearing within reasonable limits, limit the inmate's access to other inmates, prevent unsafe or hazardous situations, and provide swift discipline. Wolff, 418 U.S. at 566; Ponte, 471 U.S. at 495. Additionally, although useful, prison officials are not required to state reasons for disallowing a witness' testimony. Wolff, 418 U.S. at 566. In this case, the SHO did provide reasons for denying certain requested witnesses.

As in <u>Davies v. Valdes</u>, 462 F. Supp.2d 1084, 1093 (C. D. Cal. 2006), where the issue was whether petitioner possessed a weapon at the time of a search, inmate witnesses who were not present at the incident would not be helpful to this determination, or to a determination concerning whether plaintiff battered an officer. The SHO's stated reasons for denying petitioner's witnesses and curtailing his questioning of Officer Ortiz were reasonable and within his discretion.

In support of his claim that Lt. Stratton recommended that the criminal case against petitioner be dismissed, petitioner refers to Exhibit 11 of the petition which is merely his request for witnesses at his disciplinary. Lt. Stratton is only mentioned as one of a list of witnesses he requests. (ECF No. 1-1 at 75 – 76.) Petitioner has submitted no evidence to support his assertion. In any event, this witness was not present at the incident and the SHO's decision not to call him as a witness was correct in that his testimony was irrelevant.

With respect to petitioner's claim that investigator George Wallet should have been permitted as a witness because he had information that Sgt. Torres recanted his RVR statement and exonerated petitioner, petitioner has referenced no evidence in support. (ECF No. 1 at 29.) The court has reviewed petitioner's exhibits and finds no evidence submitted in this regard.

The evidence submitted by petitioner in fact supports the disciplinary determination. All of the witness statements taken a few weeks after the incident are consistent with the remainder of the record and the Rules Violation Report. <u>See, e.g.</u> CDC 837 Incident Report. (ECF No. 1-3 at 25 - 55.) Petitioner's due process rights were not violated by the failure to call these witnesses.

<u>Refusal to Admit Statements and Other Documentation and Denial of Other Requests by Petitioner at Disciplinary Hearing</u>

Petitioner further asserts that his disciplinary hearing was not fair and impartial for additional reasons, specifically:

> [t]he senior hearing officer additionally omitted and refused to document statements and requests made during the course of adjudicating petitioner's disciplinary hearing, including, but not limited to: petitioner's request to amend his previous oral and/or written statement to adequately reflect the senior hearing officer's hostile and belligerent attitude towards petitioner, petitioner's request to question his alleged assigned investigative employee,

12

>           petitioner's request to submit inmate witnesses' declarations and petitioner's request to document the presence of C/O M. Ortega during deliberation and disposition of petitioner's disciplinary charges….

(ECF No. 1 at 31.) Wolff provides that only minimum requirements be met. As set forth *supra*, although there is a right to an impartial decision maker, there is no right to submit a statement setting forth a hearing officer's perceived hostile and belligerent attitude. Petitioner fails to make any argument that his hearing officer was in fact biased. The Court of Appeals, noting petitioner's claim that he was denied his right to "be heard in a meaningful manner by a neutral and detached hearing body," declined to specifically address that claim; however, analyzed and concluded that "some evidence" supported the disciplinary finding. (Res't's Ex. 9.) Therefore, the court presumes that the state court considered and rejected it.

In regard to petitioner's claim that he was not permitted to question his assigned investigative employee, the RVR indicates that investigating Officer Pankratz was not one of the six witnesses requested by petitioner. (Res't's Ex. 4 at 3.) The RVR states that petitioner did not request that the investigative employee be present at the hearing. (ECF No. 1-1 at 79.) There is otherwise no distinct right to question an investigative employee.

As for petitioner's complaint that he was denied his request to submit inmate witness declarations,[4] there is no record that petitioner made these requests to his investigative employee. (Res't's Ex. 12.) In fact, the investigative report states clearly that petitioner did not request inmate witnesses at the hearing. (Id. at 2; ECF No. 1-1 at 79.) Nor does the RVR refer to any request by petitioner to admit inmate witness declarations into evidence. (Res't's Ex. 4.) There is no evidence that the two inmate declarations submitted with the instant petition were ever requested for petitioner's disciplinary hearing. (ECF No. 1-1 at 75-76.)

Finally, there is no requirement whatsoever that an inmate be permitted to document the presence of a correctional officer at the deliberation and disposition of the disciplinary hearing.

/////

---

[4] The court presumes that the inmate witness declarations attached to the instant petition are the declarations to which petitioner refers. See ECF No. 1-1 at 33, 38.

Petitioner's second ground for relief, that his due process and equal protection rights were violated, raises most of the same allegations that he raised in his first section, which have already been addressed. His additional argument that he was not permitted rebuttal evidence in the form of grand jury transcripts of the Imperial County Superior Court in regard to the criminal charges filed against him which were later dismissed, is unavailing. The RVR indicates that petitioner did request introduction of the entirety of the superior court transcripts as evidence for the hearing. (Res't's Ex. 4 at 6-7.) The SHO reported that he denied the request because the state court case had been dismissed, citing a state regulation which permits disciplinary hearing of a rules violation despite dismissal of criminal charges. (Id.) This explanation is sufficient. See Ponte v. Real, 471 U.S. 491, 497, 105 S. Ct. 2192 (1985). The right to present documentary evidence is a limited right, which may be curtailed by prison officials in order to keep the hearing within reasonable limits. Wolff, 18 U. S. at 566. Petitioner has not shown how the grand jury transcripts would have aided him at the disciplinary hearing. The transcripts submitted by petitioner have been reviewed and not only support the SHO's decision to exclude them, but establish petitioner's culpability. They are cumulative and unnecessary to the proceedings as the SHO had before him live testimony as well as the reports of five officers who were involved in and witnessed the incident.[5] (Pet., ECF No. 1-4 at 1-128.) Accordingly, this evidence would not have changed the outcome of the disciplinary hearing. The evidence presented at the disciplinary hearing included the testimony of correctional officer Ortiz, who petitioner was permitted to question in a limited manner, the Rules Violation Report, Officer Pankratz's investigative employee's report, supplemental reports to the CDC 837 crime incident report, medical reports, photos of the weapon found in petitioner's cell, and photos of injuries to correctional officer Schommer. (Res't's Ex. 4.) There was no due process violation in the decision to exclude the grand jury transcripts.

/////

---

[5] Four of the incident reports reviewed by the SHO were written by the same correctional officers who testified at the grand jury hearing. Only two witnesses who testified before the grand jury did not submit reports for the disciplinary hearing, Officer Zills and MTA Barrios, but they were not present until after the battery had occurred. See ECF No. 1-4 at 60 – 77, 89 - 95.

1        Petitioner's remaining argument, that he did not receive the proper statutory notice when
2   his RVR charge was reduced from attempted murder to battery causing serious injury, is also
3   without merit.  The purpose of advance written notice is to inform the prisoner of the charges and
4   enable him to gather and present the facts in his defense. Wolff, 418 U.S. at 564.  Here, petitioner
5   was initially charged with attempted murder of a peace officer.  (Res't's Ex. 1 at 1.)  At the
6   disciplinary hearing, the SHO reduced the charge and petitioner was found guilty of the lesser
7   included offense of battery causing serious injury.  (Id. at Ex. 4 at 1.)  This finding does not
8   violate the notice requirement as Petitioner was provided with the date, time, place, and facts at
9   issue.  In addition, the hearing officer has the authority to reduce the offense at his discretion
10  during the disciplinary hearing or, after the fact-finding portion of the hearing is completed, and
11  may find the inmate guilty of an included serious rule violation.  See Cal.Code Regs. tit. 15, §§
12  3313(c); 3315(f)(3).  There is no due process violation for failure to give notice of a lesser
13  included offense. Rivera v. Chavez, 2013 WL 1010534, *5 (C.D. Cal. Feb. 8, 2013); Jameson v.
14  Yates, 2008 WL 4937376, * (E.D. Cal. Nov. 17, 2008).  Therefore, there is no basis to support
15  petitioner's argument that he did not have sufficient notice in advance of the hearing, and his
16  claim to the contrary is unfounded.
17       To the extent that petitioner claims an equal protection violation, he has not made any
18  argument other than to claim in a conclusory fashion that because he was not afforded the same
19  due process protections as other inmates, his equal protection rights were violated.  Because this
20  court finds no due process violations, it declines to reach any equal protection argument.
21       There was "some evidence" to support the decision rendered on the disciplinary charge, in
22  the form of the investigative employee's report, the rules violation report, and the testimony of
23  Officer Ortiz at the hearing.  Petitioner was permitted to make a statement and ask some questions
24  of this witness.  There is no credible evidence that the decision maker was not impartial.
25       Under the circumstances presented here, petitioner's right to due process was not violated
26  at the February 13, 2009 disciplinary hearing. The decision of the state courts to the same effect is
27  /////
28  /////

not contrary to or an unreasonable application of the federal principles set forth above. Accordingly, petitioner is not entitled to relief on this claim.[6]

CONCLUSION

For all of the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

---

[6] To the extent that petitioner claims that the state court failed to consider his state law claims under Cal. Penal Code § 2932(c) and/or any other California regulations, petitioner is advised that a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).
    The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S. Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).
    The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480. The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73, 112 S. Ct. at 482. Habeas review does not lie in a claim that the state court erroneously allowed or excluded particular evidence according to state evidentiary rules. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). As more recently re-emphasized by the Supreme Court, "'a mere error of state law ... is not a denial of due process.'" Rivera v. Illinois, 556 U.S. 148, 129 S. Ct. 1446, 1454 (2009) (quoting Engle v. Isaac, 456 107, 121, n. 21, 102 S. Ct. 1558 [] (1982)).

Accordingly, IT IS HEREBY ORDERED that petitioner's request to expand the record is denied;

IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 3, 2013

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Jone1138.hc